[No. 16784. Department One. October 20, 1922.]

C. D. THRELKELD, *Appellant*, v. EVERETT CONWAY *et al.*, *Defendants*, FRED HINTZ *et al., Respondents.*[1]

ADVERSE POSSESSION (41)—OPEN AND NOTORIOUS POSSESSION— EVIDENCE—SUFFICIENCY. Findings that defendants acquired title to a leasehold interest in lots by adverse possession under an oral assignment of a fifty year lease, are not sustained by the evidence of one of the defendants showing conclusively that no such assignment was made, that the lessee had already made a written assignment to another, and never had put the defendant in possession, and that defendants did not even know of the lease until years after.

SAME (41). Defendants' adverse possession of a leasehold interest in lots can not be claimed by reason of their exaction of nominal rent from Japanese, who occupied without let or hindrance claiming under the lessee and his successors, as the same was not open or notorious, especially where defendants made every attempt to conceal the claim from the holder of the lease, and paid no taxes.

[1]Reported in 209 Pac. 1088.

SAME (24)—LANDLORD AND TENANT—TERMS FOR YEARS—ASSIGN-
MENT—COVENANTS OR CONDITIONS.  A formal conveyance from the
lessee of a fifty year lease, with a defeasance clause, whereby the
grantee agreed to re-transfer and re-assign the interest, in case of
payment of a promissory note, operates as an assignment of the
leasehold, and not as a mortgage, in the absence of any showing
that it was intended as a mortgage.

Appeal from a judgment of the superior court for
Whatcom county, Hardin, J., entered April 18, 1921,
upon findings in favor of the defendants, in an action
to quiet title, tried to the court. Reversed.

*R. W. Greene,* for appellant.

*C. E. Abrams,* for respondents.

FULLERTON, J.—This is an action to quiet title to real
property.  As originally instituted, the appellant
Threlkeld was plaintiff in the action and Everett Con-
way and others defendants.  After the institution of
the action, the respondents Hintz intervened therein.
Subsequently, the defendants named made default, and
the contest was waged between the plaintiff and the
interveners.

The facts of the case, as we gather them from the
record, are in substance these: Sometime prior to the
year 1890, certain owners of land in Whatcom county
platted the same into lots and blocks with streets and
alleys as a townsite, under the name of North What-
com.  Block seven of the plat, the land here in contro-
versy, was divided into sixteen lots; lots one to eight,
inclusive, forming the east half of the block, and lots
nine to sixteen, inclusive, forming the west half.  One
of the alleys delineated on the plat extended north and
south through the center of the block.  At the time
named, and for sometime prior thereto, the Belling-
ham Bay Syndicate, a corporation, had title in fee to
the west half of the block, the title to the east half

being in various holders. About the year 1890, the Bellingham Bay Syndicate placed a Japanese, known as Jimmy Dyson, in possession of the west half of the block. No formal lease seems to have been made to him, but after his entry thereon he built a small house and barn on the block, cleared certain of the land and used it for gardening purposes. He also cleared out a waterway extending from the west half of the block through the east half of the block and beyond for the purpose of drainage. The house constructed on the premises was on the west half of the block. The barn seems to have been in the north and south alley before mentioned, possibly on the east side of its center. The respondents, Hintz and wife, appeared upon the property in the fall of 1891. At that time they took possession of lot eight in the east half of the block, and shortly thereafter laid claim to the entire east half, although, in so far as the record discloses, they neither had title nor color of title to any part of the block. In 1905, Dyson sold his personal property to another Japanese, C. Yokoyama by name, and put him in possession of the property. This person, in August of the same year, secured a fifty-year lease of the property from the Bellingham Bay Syndicate. This lease he assigned in December, 1905, to one K. Katayama. Both the lease and the assignment were recorded. Yokoyama continued in possession of the property until 1907, when he left suddenly, having become involved in some financial difficulty. Shortly after his departure, another Japanese with the same name entered into possession of the property. This person occupied the place until the latter part of the year 1909, when he was succeeded by other Japanese, called in the record the "Black Japs." They remained on the place for a part of a year and were succeeded by others

known as the "Tommy Japs," who resided there until January 9, 1912. This seemingly ended the Japanese occupancy of the property, although the owner of the leasehold interest came upon the land in 1914 and "looked it over."

The respondents, as we gather from their testimony, first openly made claim to the lots in the east half of the block, other than lot eight, in 1906. At that time, the respondent Fred Hintz told Dyson, the first of the Japanese to occupy the west half, that he had a claim on the east half of the block and that he (Dyson) would have to pay a little rent for traveling over it. In 1908, he purchased lot eight from the record owner, taking a deed from the owner. This deed, however, he did not record until after the commencement of the present action. He also testified that he made the same claim to the west half of the block and that the Japanese occupying it, subsequent to one who procured the fifty-year lease, paid him a nominal rent for it. He also testified that he had done some clearing on the land during this period, had pastured it, and at one time had planted a small part of it to potatoes and had harvested the crop grown therefrom.

In 1913, the streets and alleys in the block were vacated by an order of the county commissioners. The respondent Fred Hintz signed the petition for the vacation, representing himself to be the owner of "a part of block seven." He gives as a reason why he did not then lay claim to the entire block that his title by adverse possession had not then ripened. From the departure of the last of the Japanese in 1912, until he was interrupted by the acts of the appellant in 1920, he probably exercised acts of ownership over the entire block, save that he did not pay the taxes assessed against the west half; in fact, he paid no taxes on that half of the block at any time.

On April 13, 1920, the appellant, C. D. Threlkeld,. purchased the west half of the block from the Bellingham Bay Syndicate and purchased the lease from the assignee thereof, taking a deed to the property and a written assignment of the lease. These instruments he at once recorded. At the same time, he purchased lot eight in the east half of the block from the record owner, the respondents' prior deed not then being of record. His object in purchasing the latter lot being, so he testified, to protect the drainage ditch hereinbefore mentioned.

The present action was begun in April, 1920. It was tried by the court sitting without a jury. At the trial the appellant waived any claim to the property in the east half of the block, except the claim to have the water course kept open through that part of the block. The court found the course to be a natural water course; finding further, however, that the matter was not a subject of controversy and could not be made the subject of any finding or judgment of the court. On the part of the respondents, it found that they had been "in open, notorious, continuous adverse possession" of the entire block "for the following periods of time: The east half of said block 7 since the year 1891, and said plaintiffs in intervention [respondents] are now in open, adverse possession of said east half of said block 7; the west half of said block 7, and the vacated streets bounding the same and of lots 9 to 16, both inclusive, therein since the year 1906, and had maintained continuous, notorious, open and adverse possession of said west half of said block from said year 1906 until about the 20th day of April 1920, at which time the plaintiff, C. D. Threlkeld, entered into and upon said west half of said block 7 . . . . . ". Further finding that the respondents entered into pos-

session of the property by virtue of an oral assignment to them of the rights in and to the property held by Dyson and his successor in interest, C. Yokoyama, each of whom about the year 1905, or the early part of 1906, placed the respondents in possession of the west half of the block and vested in them their rights therein, "which the court finds to be leasehold rights." Conclusions of law were made in accord with the findings, and a decree entered awarding to the respondents title in fee to the east half of the block, and awarding to them a leasehold interest in the west half for the term of the lease executed by the Bellingham Bay Syndicate to C. Yokoyama, which expires and terminates on the 25th day of August, 1955.

The appellant questions the sufficiency of the evidence to justify the conclusion that the respondents have title to the leasehold interest acquired by C. Yokoyama. With this contention we are constrained to agree. The evidence concerning the respondents' rights therein rests entirely in the testimony of the respondent Fred Hintz, and his testimony shows conclusively that he had no assignment of the lease, either orally or in writing. His claim is, and the court found, that he acquired this right by oral assignment from Dyson and C. Yokoyama. But Dyson had no interest in the lease; his was a mere temporary right of occupancy, and he could confer no higher right on the respondents. From C. Yokoyama, he does not even testify to having acquired any such right. Concerning Yokoyama, his testimony is that he left the place suddenly, without informing anyone of his intention to leave. Moreover, if the date the respondent gives as to the time he left the premises be correct, Yokoyama had at that time assigned in writing his lease to K. Katayama, the person from whom the appellant pur-

chased it, and then had no interest in it which he could assign to the respondents. He could, of course, deliver to them possession of the property, and could perhaps confer on them such remaining rights in the property as he had, but it is clear from the evidence that he did not do even so much as that. Nor did the respondent understand that he was acquiring, by any of these purported assignments, a lease of the land for a fifty-year term. His evidence makes it clear that he did not then know of the existence of the lease. He first learned of the lease from Katayama at the time of his visit to the property in 1914. In his testimony he says he was surprised, on learning that a lease existed, and that he offered to purchase it, obtaining from Katayama a promise of the first chance to purchase it in case it was offered for sale. It is plain, therefore, that the respondents' rights cannot rest on the ground of an oral assignment of the leasehold interest.

But is it contended that the respondents have a right of possession for the unexpired term of the lease in virtue of the statute of limitations. But we think this claim likewise without foundation. In our opinion, the evidence does not justify the conclusion that such possession as the respondents exercised over the premises was adverse to the Japanese occupants. The Japanese moved on the premises and occupied them without let or hindrance from respondents. Conceding the respondents' testimony to the effect that a nominal rental was exacted from the Japanese who occupied subsequently to the second Yokoyama, adverse possession is not thereby established. The possession was neither open nor notorious. On the contrary, there was a very apparent attempt to conceal the claim whenever to do so would make the claim known publicly, or make it known to the holder of the lease. The

respondents could well have made known their claim
when in 1913 the petition for the vacation of the streets
and alleys in the block was presented to them for signa-
ture, yet they did not do so, but claimed ownership only
in a part of the block; they could well have spoken in
1914 when the owner of the lease told them of his own-
ership, yet they not only did not do so, but talked to
him in a way tending to mislead him; and, more than
all this, they never paid any of the taxes assessed
against the land. In this state possession of real prop-
erty to be adverse must be actual, open, notorious,
continuous and under a claim of right or color of title,
and, for the reasons stated, we cannot conclude that the
possession shown here complied with these.

The respondent invokes the rule that the appellant
must recover on the strength of his own title, not on
the weakness of his adversary's, and contends that he
has not shown title to the lease in himself. The con-
tention that no title to the leasehold interest is shown
has its foundation in the instrument of assignment
from C. Yokoyama to K. Katayama. This instrument
was in form an absolute conveyance, followed by a con-
dition to the effect that if the assignor made a certain
payment to the assignee in accordance with the terms
of a certain promissory note, "then and in that event
the said K. Katayama will re-transfer and re-assign
the interest hereby acquired unto said undersigned
(C. Yokoyama) and not otherwise." The argument is
that the instrument is on its face a mortgage and not
an assignment, and hence a subsequent assignment of
the lease to the appellant by Katayama passed no title
in it to him. But the instrument is on its face a con-
veyance with a defeasance clause, and not a mortgage.
Possibly, under certain circumstances, extrinsic evi-
dence would be admissible to show that it was intended

as a mortgage and required foreclosure and sale to vest an absolute title, but in the absence of such a showing, the instrument must be given its legal effect. Giving it such an effect, Katayama had title which he could assign to the appellant.

Our conclusion is that the appellant has title in fee to the west half of the block, free and clear of any claim of the respondents, and is entitled to have his title quieted.

The judgment is reversed, with instructions to enter a judgment accordingly.

PARKER, C. J., MITCHELL, TOLMAN, and BRIDGES, JJ., concur.